**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:

**Jointly Administered under**
**Case No. 08-45257**

Petters Company, Inc., et al.,

Court File No. 08-45257

Debtors.

Court File Nos.:

| (includes: | |
|---|---|
| Petters Group Worldwide, LLC; | 08-45258 |
| PC Funding, LLC; | 08-45326 |
| Thousand Lakes, LLC; | 08-45327 |
| SPF Funding, LLC; | 08-45328 |
| PL Ltd., Inc.; | 08-45329 |
| Edge One, LLC; | 08-45330 |
| MGC Finance, Inc.; | 08-45331 |
| PAC Funding, LLC; | 08-45371 |
| Palm Beach Finance Holdings, Inc.) | 08-45392 |

Chapter 11 Cases
Chief Judge Kathleen H. Sanberg

---

Douglas A. Kelley, in his capacity as the
Trustee of the PCI Liquidating Trust,

Plaintiff,

ADV 17-4108

v.

**<u>MEMORANDUM AND OPINION</u>**

Thomas G. Stapleton,

Defendant.

---

At Minneapolis, Minnesota, January 17, 2018.

This proceeding came on for hearing upon Thomas G. Stapleton (the "Defendant")'s Motion to Dismiss Adversary Proceeding. For the reasons stated below, the Motion is denied.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *01/17/2018*
Lori Vosejpka, Clerk, by LH

The Defendant filed this Motion to Dismiss on October 25, 2017. Douglas A. Kelley, in his capacity as the Trustee of the PCI Liquidating Trust (the "Plaintiff") filed a response to the Motion on November 21, 2017. The Court heard oral argument on the Motion on November 29, 2017. David Galle appeared for the Defendant, and Shira Isenberg appeared for the Plaintiff. After oral argument the Court took this matter under advisement.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, Fed. R. Bankr. P. 7001, and Local Rule 1070-1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (H) and (O). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background and Procedural History**

This adversary proceeding originates from bankruptcy cases filed after the failure of the Petters Ponzi scheme orchestrated by Thomas J. Petters and his associates, the history of which has been well documented in this district as well as others nationwide.[1] In this case, the Plaintiff is Douglas A. Kelley, formerly the Chapter 11 Trustee for Petters Company Inc. and its affiliates ("PCI or Debtors"), now the PCI Liquidating Trustee.[2]

On September 1, 2017, the Plaintiff filed this adversary proceeding against the Defendant. The Plaintiff alleges that Arrowhead Capital Partners II, L.P. Fund (the "ACP II Fund") invested in PCI through use of a special purpose entity known as Metro I, LLC, ("Metro

---

[1] *See e.g.*, *In re Petters Co., Inc.*, 401 B.R. 391 (Bankr. D. Minn. 2009), *aff'd*, 620 F.3d 847 (8th Cir. 2010); *In re Petters Co., Inc.*, 440 B.R. 805 (Bankr. D. Minn. 2010); *In re Petters Co., Inc.*, 506 B.R. 784 (Bankr. D. Minn. 2013); *In re Petters Co., Inc.*, 548 B.R. 551 (Bankr. D. Minn. 2016); *In re Polaroid Corp.*, 472 B.R. 22 (Bankr. D. Minn. 2012); *aff'd*, 779 F.3d 857 (8th Cir. 2015); *see also Peterson v. Winston & Strawn LLP*, 729 F.3d 750, 751 (7th Cir. 2013); *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 744 (7th Cir. 2013); *United States Sec. and Exch. Comm'n v. Quan*, 817 F.3d 583, 587–589 (8th Cir. 2016); *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 836–837 (8th Cir. 2014); *In re Cypress Fin. Trading Co., L.P.*, 620 Fed.Appx. 287, 288 (5th Cir. 2015); *In re Palm Beach Fin. Partners, L.P.*, 527 B.R. 518, 521 (S.D. Fla. 2015); *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 319–321 (Bankr. S.D. Fla. 2013).

[2] *See* Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Chapter 11 Plan of Liquidation Dated April 8, 2016, *In re Petters, Company, Inc., et al.*, No. 08-45257, (Bankr. D. Minn) Dkt. No. 3305, pg 16.

I"), (formerly known as Metro Gem Capital, LLC).[3] The Debtors issued promissory notes to or for the benefit of the ACP II Fund and made payments to ACP II Fund on account of those promissory notes.[4]

According to the Complaint, "Defendant was an investor in the ACP II Fund and received transfers of the Debtors' property from the ACP II Fund, which had received the transfers from PCI and MGC Finance, through Metro I. With this Complaint, the [Plaintiff] seeks to recover approximately $1,075,598.37 in transfers of the Debtors' property made to the Defendant."[5]

There is one cause of action in the Complaint filed in this adversary proceeding: under §§ 550(a) and 551 of the Bankruptcy Code and Minn. Stat. § 513.48(b), the Defendant was a mediate, immediate or subsequent transferee of fraudulent transfers from the Debtors to the ACP II Fund through Metro I and those fraudulent transfers, or the values thereof, are recoverable for the benefit of the substantively consolidated estates of the Debtors.[6]

The Defendant filed this Motion under Federal Rule of Bankruptcy Procedure 7012(b)(6) and argues that the Plaintiff has failed to state a claim for which relief can be granted because this action is premature. The Defendant argues that *before* he can be sued under § 550 for recovery as a mediate, immediate or subsequent transferee of a fraudulent transfer, there must be an actual avoidance of the initial transfer under §§ 544, 545, 547, 548, 549, 553(b), or 724(a). Thus, the Defendant argues that this case is premature because, while there is a pending

---

[3] Dkt. No. 1 at ¶ 12.

[4] On October 5, 2010, the Plaintiff filed an adversary proceeding against ACP II Fund and Metro I, among other entities, in order to recover the amounts paid to them on account of those promissory notes. That adversary proceeding remains pending in this Court as Adversary No. 10-4328.

[5] Dkt. No. 1 at ¶ 12.

[6] Dkt. No. 1 at ¶¶ 93-97.

adversary proceeding to avoid the initial transfers, there has been no ruling or judgment against Metro I, Arrowhead and the ACP II Fund actually avoiding the transfers.

**Standard of Review**

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.[7] Although the factual allegations need not be detailed, they must be sufficiently plead to "raise a right to relief above the speculative level ...."[8] The complaint must state a right to relief that is plausible on its face.[9] Further, Rule 9(b) requires that allegations of fraud, including allegations of aiding and abetting fraud, must be plead with particularity.[10] Rule 9(b) must be read "in harmony with the principles of notice pleading."[11]

**Discussion**

The Defendant argues that the plain language of § 550 requires that the underlying transfers to Metro I, Arrowhead or ACP II Fund be avoided before the transfer to the Defendant, or its value, can be recovered for the benefit of the estates. In other words, the Defendant argues that because there is not yet a judgment avoiding the initial transfers to ACP II Fund, Arrowhead or Metro I, there cannot be a judgment entered against the Defendant and the proceeding must be dismissed as a matter of law as untimely. The Plaintiff argues that no judgment must be entered prior to suing a mediate, immediate or subsequent transferee of fraudulent conveyances.

---

[7] *Shank v. Carleton Coll.*, No. 16-CV-1154 (PJS/FLN), 232 F. Supp. 3d 1100, 1108 (D. Minn. 2017); *citing Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).
[8] *Shank*, 232 F. Supp. 3d at 1108; citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
[9] *Id.* citing *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955.
[10] *E–Shops Corp. v. U.S. Bank Nat. Ass'n*, 795 F. Supp. 2d 874, 877 (D. Minn. 2011), aff'd, 678 F.3d 659 (8th Cir. 2012); citing Fed. R. Civ. P. 9(b).
[11] *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 984 (D. Minn. 2011); quoting *BJC Health Sys. v. Columbia Cas. Co.*, 478 F. 3d 908, 917 (8th Cir.2007).

Section 550 provides that "to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property …." 11 U.S.C. § 550(a). Section 550 also limits the time that a party has to seek recovery for the transfer and provides that "[a]n action or proceeding under this section may not be commenced after the earlier of – (1) one year after the avoidance of the transfer on account of which recovery under this section sought; or (2) the time the case is closed or dismissed." 11 U.S.C. § 550(f).

First, although an adversary proceeding against the initial transferees is pending, there is no judgment avoiding the initial transfer. Second, the Debtors' bankruptcy case has not been closed or dismissed. Thus, neither the first nor the second limitation of § 550(f) has been met and the Complaint is not time barred. The Defendant's Motion, however, argues that there is a limit implied in § 550(a) that requires the underlying transfer to the initial transferee be avoided ***before*** the Plaintiff can obtain a judgment against the Defendant as a subsequent transferee.

There is a split in authority on this issue. A minority of courts find that the phrase "to the extent that" is plain and unambiguous and requires avoidance of the initial transfer under one of the other enumerated sections of the Bankruptcy Code before there can be an attempt to collect from a subsequent transferee.[12] A majority of courts, however, disagree based on the legislative history of § 550.[13] The House and Senate Committee Reports explain that the phrase "to the extent that" as used in § 550 is meant to incorporate the protections granted to transferees found in (then proposed) §§ 548(c) and 549(b).[14] In other words, if the initial transferee has a defense to the avoidance of the transfer, then a subsequent transferee would also be entitled to raise that

---

[12] 5 COLLIER ON BANKRUPTCY ¶550.02[1] fn 5 (Richard Levin & Henry J. Summer eds., 16th ed.) citing *Weinman v. Simons (In re Slack-Horner Foundries Co.)*, 971 F.2d 577, 580 (10th Cir. 1992); and *In re Trans-End Technology, Inc.*, 230 B.R. 101 (Bankr. N.D. Ohio 1998).
[13] 5 COLLIER ON BANKRUPTCY ¶550.02[1] fn 5 & 6 (Richard Levin & Henry J. Summer eds., 16th ed.).
[14] *Id*.

defense; any award granted under § 550(a) would be limited to the amount of the initial transfer that could be avoided, but the ability to avoid the transaction is not limited.

There is no Eighth Circuit precedent analyzing whether a suit against a subsequent transferee is barred if the initial transfer is not first avoided. This Court, however, has already followed the majority of courts and ruled that a plaintiff need only allege that a transfer is avoidable to pursue a cause of action under § 550.[15]

The Eleventh Circuit, in following the majority, discussed the distinction between avoiding the transaction and recovering the value of the property, which is underscored by § 550(f) and its separate statute of limitations on recovery actions.[16] In *IBT International, Inc. v. Northern (In re International Administrative Services, Inc.),* a trustee filed an action under § 550 against a subsequent transferee. The Eleventh Circuit explained that:

> [A] strict interpretation of § 550(a) produces a harsh and inflexible result that runs counterintuitive to the nature of avoidance actions. If the initial transaction must be avoided in the first instance, then any streetwise transferee would simply re-transfer the money or asset in order to escape liability. The chain of transfers would be endless….[17]

The court went on to find that two approaches could be used to avoid that harsh and inflexible result caused by a strict interpretation of § 550. The first approach is the mere conduit analysis, and the second is the "avoidable" analysis of § 550(a).[18] Under the mere conduit approach a court makes a determination as to whether the first party to receive possession of the property was also the "initial transferee". The first party who exercised control over the property is the initial transferee. All prior parties who received the property but who did not exercise

---

[15] *See* Transcript of Proceedings, February 7, 2017, *Kelley v. Northwestern College (In re Petters Company, Inc.),* Adv. No. 16-04129 (Bankr. D. Minn.) Dkt No. 20. The Court is not persuaded that its earlier ruling was incorrect.
[16] *IBT International, Inc. v. Northern (In re International Administrative Services, Inc.)*, 408 F.3d 689, 703 (11th Cir. 2005)
[17] *Id.* at 704-05.
[18] *Id.*at 705.

control over it would be mere conduits and not liable under § 550 if they acted without bad faith and were innocent participants in the underlying fraudulent activity.[19] It would be a waste of time and resources to require a trustee to avoid a transfer to the conduit before seeking recovery from a later transferee; a plaintiff should not be required to waste resources to avoid that first transfer of the property.

The *IBT* Court went on to explain that under the "avoidable" approach, the trustee may simultaneously avoid the transfer (under one of the enumerated sections of the Bankruptcy Code) and seek recovery under § 550. Thus, a plaintiff is allowed to recover from the "mediate" transferees of the initial transferee once it is shown that an avoidable transfer existed. A plaintiff can skip over the initial transferee to collect from those next in line.[20] Requiring an actual avoidance of the initial transfer conflates the avoidance and recovery sections of the Bankruptcy Code; the "to the extent that" language as used in § 550(a) simply acknowledges that at times a transfer may be avoided only in part, and only the avoided portion of the transfer can be recovered from a subsequent transferee.[21]

Relying on the legislative history of § 550, the court in *IBT* explained that liability cannot be imposed on a subsequent transferee to the extent that an initial transferee is protected by a defense under the Bankruptcy Code.[22] It was appropriate to look beyond the plain language of the statute because a strict and literal reading could lead to an absurd result.[23] A strict reading of the statute could lead to costly, absurd or bizarre exercises in futility that have the potential to contribute to a debtor's already shrinking estate.[24] The court reasoned that looking at the statute

---

[19] *Id.*
[20] *Id.* at 706.
[21] *Id.* citing *Richmond Produce*, 195 B.R. at 463.
[22] *Id.*
[23] *Id.*
[24] *Id*. at 707-08.

as a whole leads to the conclusion that "Congress contemplated 'to the extent that a transfer is avoided' to be a simultaneous as well as successive process."[25]

In another more recent case involving the massive Bernard Madoff Ponzi scheme, the United States Bankruptcy Court for the Southern District of New York decided "whether Section 550 requires a trustee to formally avoid an initial transfer to permit recovery against a subsequent transferee or if the mere avoidability of such transfer is sufficient."[26] The *Madoff* court followed the majority of courts, finding that § 550 requires only that a transfer be avoidable and that a trustee is not required to litigate to a final judgment of avoidance against the initial transferees before seeking recovery from subsequent transferees.[27] The *Madoff* court stated that avoidability is an attribute of the transfer and not the creditor.[28] As the court explained, this is particularly true where it is impractical or impossible to satisfy a precondition to avoidance, such as when the initial transferee no longer exists because the entity has collapsed or there is no party to sue. It would be absurd to require a trustee in bankruptcy to engage in costly and protracted litigation in the midst of a liquidation proceeding with little chance of meaningful recovery.[29] Instead, § 550 should be construed flexibly to avoid an impractical result.[30] Finally, the *Madoff* court held that the trustee would be required to prove that the initial transfer was avoidable and the subsequent transferee would be afforded its due process rights to contest the avoidability of the initial transfers.[31]

As stated in its prior ruling, this Court agrees with the majority of the courts including the Eleventh Circuit and the *Madoff* court. A strict or literal reading of § 550(a) could lead to

[25] *Id*. at 708.
[26] *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities, LLC (In re Madoff)*, 480 B.R. 501, 520 (Bankr. S.D.N.Y. 2012).
[27] *Id.*
[28] *Id*. citing *Kendall v. Sorani (In re Richmond Produce Co.)*, 195 B.R. 455, 463 (N.D. Ca. 1996).
[29] *Id.* at 521.
[30] *Id.* at 522.
[31] *Id.* at 522.

absurd, futile or costly results. Here there is a suit pending to avoid the initial transfers to ACP II Fund, Arrowhead and Metro I. The defendants in that suit will have the opportunity to raise and litigate any defenses. Any judgment entered against the Defendant in this adversary proceeding will be limited to the judgment obtained against the defendants in that proceeding. Dismissing this case could lead to an absurd, futile and costly result; the Plaintiff would be required to prepare and pay for the filing of the same complaint at a later time in order to assert the same causes of action that are included in this proceeding. This could lead to a further delay in finally bringing these Petters bankruptcy cases to conclusion so that distributions can be made to creditors.

**Conclusion**

The Defendant's motion to dismiss is denied. The Plaintiff need only allege that an initial transfer is avoidable when suing a subsequent transferee to recover the value of the property transferred pursuant to 11 U.S.C. § 550(a).

IT IS ORDERED: The Motion to Dismiss Adversary Proceeding is denied.

/e/ Kathleen H. Sanberg

KATHLEEN H. SANBERG
CHIEF UNITED STATES BANKRUPTCY JUDGE